UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BRYAN PENNINGTON, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:12CV5 SNLJ |
| | ) |
| INTEGRITY COMMUNICATIONS, | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the parties' cross motions for summary judgment. Central to the motions is the issue of whether plaintiffs were employees or independent contractors under the Fair Labor Standards Act when plaintiffs completed work orders for defendant. The motions have been fully briefed and are ready for disposition. For the following reasons, the Court will deny the motions for summary judgment.

**I.  Background**

Plaintiffs filed a multi-count complaint against defendants Integrity Communications, Inc. ("Integrity"), Integrity Communications, LLC, Holly Rehder, and Ray Rehder (collectively, "defendants"), seeking to recover unpaid wages, liquidated damages, attorney fees, and other relief from defendants for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), the Employee Retirement Income

Security Act, 29 U.S.C. § 1001, et seq. ("ERISA"), the Missouri Minimum Wage Law, § 290.500 RSMo. et seq. ("MMWL"), and Missouri common law.

According to the Second Amended Complaint, plaintiffs Bryan Pennington, Stephen Pennington, Sr., and Stephen Pennington, Jr. install cable components (cable and cable boxes) for the defendants. Although the defendants classified the plaintiffs as independent contractors and paid them "piece rate wages" (meaning they were paid by the job), plaintiffs allege that they were misclassified and are instead employees of the defendants. Plaintiffs allege they were required to wear shirts imprinted with defendants' logo and to present themselves as defendants' employees. Defendants supplied plaintiffs' tools, but plaintiffs were required to pay defendants for the tools. Defendants directed and controlled when plaintiffs reported to scheduled jobs, where to report, when the workday ended, and how to perform necessary services. Defendants also required plaintiffs to attend mandatory training meetings for which they did not receive compensation. Plaintiffs allege they worked exclusively for defendants and were subject to discipline by defendants, up to and including termination, for reasons such as no call/no show, failing a quality control check, or being rude to customers.

Plaintiffs state that they were paid by the job, but that they were not paid for all the jobs completed. They complain that they were not paid overtime or for expenses related to travel, that their work hours were not recorded, and that defendants failed to keep records for employees sufficient to determine employee wages and hours in violation of the FLSA. Plaintiffs state that they were required to work evenings and weekends without overtime compensation and they were not reimbursed for travel expenses.

2

Plaintiffs allege that defendants violated the MMWL by failing to pay minimum wage and overtime wages. Plaintiffs allege that, had they been properly classified as employees rather than independent contractors, they would have been permitted access to defendants' health, dental, and vacation pay plans. Plaintiffs allege that defendants gained excess profits by misclassifying plaintiffs as independent contractors. Further, plaintiffs state that Bryan Pennington was terminated as a result of his complaints regarding defendants' allegedly unlawful wage and hour practices.

Defendants filed motions for summary judgment on plaintiffs' federal law claims seeking a determination that plaintiffs were independent contractors at the time plaintiffs completed work orders for defendant Integrity and, therefore, a determination that plaintiffs were not covered by the FLSA. Although a separate motion was filed as to each plaintiff, the issues and a vast majority of the facts are the same and, therefore, defendants' motions will be addressed collectively. Plaintiffs filed a combined motion for partial summary judgment seeking a determination that they were defendants' employees under the FLSA and thus, were entitled to the benefits and protections of the FLSA.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*,

838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson,* 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Township Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). However, the court is required to

resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

**III. Discussion**

Defendants and plaintiffs filed cross motions for summary judgment seeking a determination on the issue of whether plaintiffs were employees covered by the FLSA or independent contractors exempt from the FLSA when plaintiffs completed work orders for defendant Integrity. The FLSA provides minimum and overtime pay scales for covered employees. 29 U.S.C. §§ 201–219. Under the FLSA, "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee" and "employ" as "to suffer or permit to work." 29 U.S.C. § 203(d); 29 U.S.C. § 203(g). These terms are broad and comprehensive in order to accomplish the remedial purposes of the FLSA. *United States v. Rosenwasser,* 323 U.S. 360, 362–63, (1945). "Therefore, the courts do not apply the traditional common law analysis to distinguish between 'employees,' to whom the FLSA applies, and 'independent contractors,' to whom it does not." *Dole v. Amerilink Corp.*, 729 F.Supp. 73, 76 (E.D. Mo. 1990). "Rather, the analysis focuses on the 'economic reality' of the employment relationship." *Id.* (citing *Sec'y of Labor, U.S. Dept. of Labor v. Lauritzen,* 835 F.2d 1529, 1534 (7th Cir.1987); *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043 (5th Cir.), *cert. denied,* 484 U.S. 924, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987)).

Other courts that have considered this issue examine six factors to determine the economic reality of the working relationship. *Dole*, 729 F.Supp. at 76; *see also Bennett*

*v. Unitek Global Services, LLC*, 10C4968, 2013 WL 4804841 (N.D. Il. Sept. 9, 2013); *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1312 (11th Cir. 2013). The six factors to be considered are:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) whether the service rendered requires a special skill;

(5) the degree of permanency and duration of the working relationship;

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id*. "The Court may not make its determination based on one particular factor, but rather must look to all the circumstances of the work activity." *Id*. (citing *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730, 67 S.Ct. 1473, 1476, 91 L.Ed. 1772 (1947)). "Moreover, 'the factors are not exhaustive, nor can they be applied mechanically to arrive at a final determination of employee status.'" *Id.* (citing *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043 (5th Cir. 1987). "[T]he overarching focus of the inquiry is economic dependence." *Scantland*, 721 F.3d at 1312. "Ultimately, in considering economic dependence, the court focuses on whether an individual is in business for himself or is dependent upon finding employment in the business of others." *Id.* (internal quotations and citations omitted).

A. Defendants' Motions for Summary Judgment

Defendants have moved for summary judgment on plaintiffs' federal law claims arguing that the undisputed facts evidence that plaintiffs were independent contractors, not employees entitled to the benefit of the FLSA. Defendants maintain that the decision in *Dole v. Amerilink Corp.* is controlling and argue that the Court, in *Dole*, found that workers in situations identical to those alleged by plaintiffs were not employees under the FLSA. *Dole*, however, was written following a bench trial and the decision was made by the Court after consideration of the testimony of the witnesses, documents in evidence, and the stipulations of the parties. *Dole*, 729 F.Supp. at 74. The Court made findings of facts and conclusions of law and determined that, based on the six factors of the economic reality test, the *Dole* plaintiffs were not employees of the defendant cable company. *Id.* at 75-77. *Dole* certainly does not stand for the proposition that all cable installers are necessarily not employees under the FLSA.

Similar issues have been addressed by a number of courts with varying results. Following bench trials, the court in *Solis v. Cascom, Inc.*, 3:09CV257, 2011 WL 10501391, (S.D. Ohio Sept. 21, 2011) held that cable installers were employees under the FLSA, and the court in *Parrilla v. Allcom Const. & Installation Services, LLC*, 6:08-cv-1967-Orl-31GJK, 2009 WL 2868432 (M.D. Fl. Aug. 31, 2009) held that cable installers were independent contractors exempt from the FLSA. A number of courts faced with motions for summary judgment on the issue of whether cable installers are employees under the FLSA or independent contractors exempt from the FLSA have found that substantial factual disputes precluded summary judgment. *See Scantland v. Jeffry*

7

*Knight, Inc.*, 721 F.3d 1308 (11th Cir. 2013); *Lang v. DirecTV, Inc.*, 801 F.Supp.2d 532 (E.D. La. 2011); *Keeton v. Time Warner Cable, Inc.*, 2:09-CV-1085, 2011 WL 2618926 (S.D. Ohio July 1, 2011); *Muller v. AM Broadband, LLC*, 07-60089-CIV, 2008 WL 708321 (S.D. Fl. March 14, 2008); *Santelices v. Cable Wiring*, 147 F.Supp.2d 1313 (S.D. Fl. 2001). Other courts have granted summary judgment finding that cable installers were independent contractors based on the particular facts of those cases. *See Keller v. Miri Microsystems, LLC*, 12-15492, 2014 WL 1118446 (E.D. Mi. March 20, 2014); *Bennett v. Unitek Global Services, LLC*, 10C4968, 2013 WL 4804841 (N.D. Il. Sept. 9, 2013); *Scruggs v. Skylink, Ltd.*, 3:10-0789, 2011 WL 6026152 (S.D.W.Va. Dec. 2, 2011); *Chao v. Mid-Atlantic Installation Services, Inc.*, 16 Fed.Appx. 104 (4th Cir. 2001); *Herman v. Mid-Atlantic Installation Services, Inc.*, 164 F.Supp.2d 667 (D. Md. 2000). It is clear from the foregoing cases that the analysis is fact intensive and each court must make the determination on the particular facts before them.

Turning to the facts offered by the parties on defendants' motions, this case falls into the category of cases where substantial factual disputes preclude summary judgment. The parties disagree as to material facts that are significant in the six factor analysis of the economic reality test. Although both sides argue that the undisputed facts support their respective positions, the parties go to great lengths, in voluminous filings, to dispute the other side's statement of facts and argue that facts are being taken out of context.

    1.    Control

The parties tell a very different story as to how much control defendants exercised over plaintiffs' work. Substantial factual disputes exist precluding the Court from

determining whether the degree of control factor weighs in favor of employee or independent contractor status.

Plaintiffs allege that defendants exercised significant control over their work and offer the following facts. Defendants controlled the manner in which plaintiffs performed their tasks, and where and how much they worked, including circulating memoranda detailing the precise manner in which to complete work orders and bill them. Defendants required plaintiffs to fully complete their routes and work orders in a timely manner. Plaintiffs could not choose to take or reject certain work orders. Plaintiffs were directed as to which office or warehouse they had to show up at each morning. Plaintiffs were provided a work order each day listing the jobs to perform that day, and installers were required to follow the work order sheet. Plaintiffs were required to do each job assigned in the specific way instructed by defendants. Plaintiffs would have to re-do the work if it did not meet defendants' satisfaction. Defendants monitored and controlled plaintiffs' work by means of personal visits, phone calls, text messages, and emails.

Plaintiffs wore a grey "Integrity" t-shirt and ID badge to identify themselves as authorized, Integrity-affiliated installers. Integrity provided plaintiffs with billing documents, frequent memoranda detailing how to bill, memoranda and emails detailing performance data, insurance agents to contact to obtain required insurance, and bonuses for customer compliments. Installers contact or are required to contact supervisors when they are running behind and need assistance completing their route, when they need authorization to vary from the work order, to submit billing, dispute billing, or answer any questions related to billing. Integrity has required installers to take "a few unwanted

9

days off" for failing to turn in cash belonging to the cable company received by the next business day. Installers would also be suspended for failing to notify a supervisor that they would be late. Installers accused of sexual harassment are not given new work for the period that the claims are investigated by Integrity.

Defendants allege that the plaintiffs/installers were not subject to any meaningful control over their work by defendants and submit the following facts. According to defendants, Integrity has no requirements for how installers complete jobs, instead the requirements of the installations are set by the cable company. Integrity did not supervise the work of plaintiffs or other cable installers. Plaintiffs' and other installers' work was checked for quality at random. If the jobs were not completed in conformity with the cable system specifications, plaintiffs and other installers were charged back for the non-conforming work. Integrity provides nothing to the installers other than the work orders from the cable company and a document the installers sign showing the equipment the installer picked up that day. Integrity's supervisors usually have no contact with installers after the installers leave with their work orders and equipment. Installers cannot be, and have not been, suspended by Integrity. If Integrity receives complaints about an installer, like a sexual harassment complaint, the installer is not given further work.

The foregoing is a portion of the disputed facts offered by plaintiffs and defendants as to the nature and degree of the defendants' control as to the manner in which the plaintiffs' work is to be performed. There are a multitude of other disputed facts offered on the issue of control. The Court cannot make credibility and factual

determinations on a summary judgment motion. This factor requires factual determinations that cannot be made by this Court on summary judgment.[1]

2. Opportunity for Profit or Loss

According to defendants, the installer's work ethic and planning determines how much money the installer makes. Installers can sell additional services to the customer if they are working in the NewWave or Suddenlink systems. If an installer sells additional services, he can increase his payment. Integrity encourages any installer to contract directly with a cable company which does not contract with Integrity. Integrity discourages and will not allow an installer to contract directly with a cable company which already contracts with Integrity.

Plaintiffs contend that the installers' earnings depend on the work orders he is provided by defendants and offer the following facts. Defendants required plaintiffs and other installers to work so many hours that they did not have the time to sell additional services. Installers are frequently not assigned to systems providing them with the ability to sell additional services, as MediaCom and Charter provide the majority of defendants' work orders. Defendants possess the sole discretion as to which installer is sent to work

---

[1] Defendants argue that *Dole* is controlling on the control factor. However, there are factual disputes here that would distinguish *Dole*. The facts found in *Dole* and the facts here, when viewed in the light most favorable to plaintiff, are different in several important respects. In *Dole*, for example, the cable company did not exercise control over its workers' hours; the workers wore generic "cable television" shirts; the workers were completely in charge of hiring, firing, paying, and otherwise helping their helpers. Here, plaintiffs allege that defendants control its workers' hours; the workers must wear shirts with the defendants' logo on them and hold themselves out as employees; and the workers cannot hire their own helpers.

in which system. Defendants send installers they are pleased with to more lucrative work areas and punish others by sending them to less lucrative work areas. Integrity possesses contracts with the five or six cable companies providing work orders, including the two largest, Mediacom and Charter. The only company in the region providing work orders that Integrity does not have a contract with is City Cable, the one providing the fewest work orders. Installers were not permitted to bill any piecework on service calls. Installers were not permitted to bill unauthorized work beyond that listed on work orders. Installers were not permitted to vary their billing structure.

Like the control factor, this factor also requires factual determinations that cannot be made by this Court on summary judgment.

      3.      Investment in Equipment or Materials

On this factor, the essential facts are undisputed – plaintiffs had to provide or purchase their own tools and use their own vehicles. If an installer did not have all of the tools he needed, the tools were provided by defendants and defendants determined how much to deduct from the installer's check for the tools. Without going into factual detail on this issue, the context and manner in how the tools were purchased makes this factor weigh only weakly in favor of independent contractor status but it can be argued in favor of employee status.

      4.      Special Skill

Plaintiffs dispute defendants' contention in their motions that plaintiffs were skilled workers. According to plaintiffs, defendants do not characterize cable installers as skilled workers. In support of this contention, plaintiffs offer the following facts, some of

which are admitted by defendants and some are denied or alleged to be taken out of context. Defendants prefer not to use the word "qualified" to describe Integrity affiliated cable installers. Defendants state that the reasons why any person off the street could not work as an installer is a matter of lack of insurance, safety, and knowledge of each regional company's specifications. Defendants do not require installers to have a high school education or equivalent, and only require installers to possess the minimal literacy necessary to obtain a driver's license. Installers are only required to have the physical capabilities required to perform cable installation work, such as the ability to climb a ladder or crawl underneath a house. Defendants describe the primary qualification of installers as knowing their limitations and suggest cable installing requires limited mental exertion. Training periods last for installers last two weeks and subsequent training periods are to get acclimated to regional paperwork variations and cable company customary specifications in order maximize network performance. There are no written quality or ability tests that an installer must pass in order to complete work orders for Integrity. Installers are not required to be licensed in any regions in which defendants contract to work.

 Defendants admit there is no education requirement to be an installer. Instead, installers are trained in the various cable systems by riding along with, and working with, another installer. Defendants contend that plaintiffs use the special skills acquired from working with other installers to complete the work orders in the most efficient manner possible. Defendants argue that the Court in *Dole* found that cable installation requires special skills and that this Court should make the same finding. In fact, the Court's

13

finding in *Dole* was that "the installers possess the special skills of carpenters and electricians. These skills are required in order to obtain Amerilink jobs." There is no such evidence before the Court in this case. There is a factual dispute as to whether plaintiffs are skilled workers. This factor requires a factual determination that cannot be made by this Court on summary judgment.

    5.    Permanency and Duration

Plaintiffs contend that their employment relationship with defendants was an indefinite, exclusive, at-will relationship of an employee. Plaintiff alleges that defendants describe the employment relationship between installers and defendants as an at-will relationship that can be terminated at any time for any reason. Plaintiffs state that they engaged in an exclusive employment relationship with defendants and lacked the ability to work for a cable company other than defendants. Defendants gave them full days of work orders and routes each day with plaintiffs routinely working twelve hour days and sixty to seventy hours per week. Plaintiffs contend defendants made significant investments in plaintiffs by funding their training.

Defendants, on the other hand, submit facts that they allege are indicative of an independent contractor relationship. None of the plaintiffs worked for Integrity for very long. Plaintiff Bryan Pennington completed work orders for defendant Integrity from August 2011 to October 2011. Plaintiff Steve Pennington, Jr. completed work orders for defendant Integrity from January 2008 to September 2008 and May 2011 to September 2011. Plaintiff Steve Pennington, Sr. completed work orders for defendant Integrity from December 2008 to May 2009 and August 2010 to October 2011. According to

14

defendants, the nature of cable installation business is itinerant and inconsistent and better suited to independent contractor employment relationships. They contend that while some installers may have an exclusive relationship with Integrity, others do not. As described by defendants, "some installers farm, work construction or even deliver pizza while also working orders for Integrity." Defendants encourage installers to contract with other companies, but will not provide work orders to an installer that is trying to become a direct competitor with Integrity. Installers do not sign any sort of non-competition or non-solicitation agreements.

On this factor, the facts are not necessarily disputed; it is the significance of the facts that must be determined. However, due to the substantial disputed facts involved in this case, the Court will not make a determination on this factor at this time because it must look to the circumstances in their entirety on the ultimate determination of employee or independent contractor status.

### 6. Integral Part of Alleged Employer's Business

For this factor, there is no dispute. The installers clearly play an integral role in the defendants' business. This factor would seem to weigh in favor of employee status. *Dole*, 729 F.Supp. at 77. However, this factor alone is not determining, particularly where there are material factual disputes as to the other factors that prohibits summary judgment.

### B. Plaintiffs' Combined Motion for Partial Summary Judgment

Plaintiffs have moved for partial summary judgment seeking a determination that they were defendants' employees under the FLSA and thus, were entitled to the benefits

and protections of the FLSA. Although plaintiffs vehemently disputed defendants' facts on the issue of whether plaintiffs were independent contractors for defendants' motions, they then contend in their own motion that the "undisputed" facts evidence that they were employees. However, as set forth above in the discussion on defendants' motions, there are material factual disputes that preclude a determination of whether plaintiffs were employees or independent contractors at this time.

## IV. Conclusion

In sum, there are genuine issues of material fact that preclude a determination as to whether plaintiffs are employees covered by the FLSA or independent contractors exempt from the FLSA. Because this is the central issue for the parties' motions for summary judgment, the motions will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motions for summary judgment (ECF #105, #111, and #117) are **DENIED**.

**IT IS FURTHER ORDERED** that plaintiffs' combined motion for partial summary judgment (ECF #135) is **DENIED**.

Dated this 20th day of May, 2014.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE